UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ERIC RURAL HANNA,

                    Petitioner,                          Case No. 2:22-cv-96

v.                                                       Honorable Paul L. Maloney

MIKE BROWN,

                    Respondent.

_____/

## OPINION

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.

Petitioner Eric Rural Hanna is incarcerated with the Michigan Department of Corrections at the

Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. On November 8,

2013, following a three-day jury trial in the Chippewa County Circuit Court, Petitioner was

convicted of nine offenses: three counts of assault with intent to commit great bodily harm less

than murder (AGBH), in violation of Mich. Comp. Laws § 950.84; five counts of assault with a

dangerous weapon (felonious-assault), in violation of Mich. Comp. Laws § 750.82; and one count

of first-degree criminal sexual conduct (CSC-I), Mich. Comp. Laws § 750.520b. On January 30,

2014, the court sentenced Petitioner as a third-offense habitual offender, Mich. Comp. Laws

§ 769.11, to prison terms of 2 years, 10 months to 20 years on each of the AGBH convictions, 2

years, 1 month to 8 years on each of the felonious-assault convictions, and 16 years, 8 months to

60 years on the CSC-I conviction.

        On May 11, 2022, Petitioner filed his habeas corpus petition, raising the following grounds

for relief:

I.      Showing of "good cause" for failure to raise issues on a previous appeal . . . is met under 6.508(D)(3).

II.     Is "actual prejudice" proven by all of the arguments contained in Mr. Hanna's MCR 6.500 motions, supplemental, MCR 6.500 motions and all supporting memorandums of law in support.

(Pet., ECF No. 1, PageID.4, 6, 8.) It appears that, by way of this statement of issues, Petitioner attempts to incorporate into his habeas petition certain issues he raised in his state court collateral attack on the judgment. Petitioner then presents this Court with a listing of those state court issues in the petition, (*see* ECF No. 1, PageID.4), and in a selection of pleadings from the state court record, (*see* ECF No. 1-1, PageID.27, 30–33, 36, 54). Giving the benefit of every doubt to Petitioner, a review of the state court pleadings Petitioner attached to the petition indicates that the issues Petitioner is asserting are as follows:

I.      Prosecutor failed to file a notice of intent supplement into charging the defendant as a habitual offender prior to trial.

II.     Appellate and trial attorney [were] ineffective for not challenging the scoring on [Offense Variable (OV)] 3.

III.    Appellate counsel was ineffective for failing to raise in direct appeal that defendant had improperly added charges.

IV.     The appellate and trial counsel were ineffective for failing to object and raise a *Batson* challenge during the voir dire jury poll effectively violating defendant's right to a fair cross-selection of community.

V.      Defendant-Appellant [is] entitled to resentencing when OV 12 was scored incorrectly resulting in a higher guideline range due to constitutionally ineffective assistance of a counsel for failure to object to the guidelines.

VI.     [T]he search [was] illegal and in violation of the state and federal constitutions where the search warrant was not signed by the magistrate and the officers conducting the search had ample opportunity to correct the error but failed to do so.

VII.    Defendant's rights [were] violated when the magistrate added extra charges during bindover in violation of separation of powers.

VIII.   [T]he admission of the gun brought in months after the fact [was] improper.

IX.     Defendant's sentence [is] procedurally and substantively unreasonable, disproportionate, disparate, and inequitable.

(Pet., ECF No. 1, PageID.4; ECF No. 1-1, PageID.27, 30–33, 36, 54.)

In an opinion and order (ECF Nos. 5 and 6) entered on May 19, 2022, the Court directed Petitioner to show cause why his petition should not be dismissed as untimely. Petitioner responded to the Court's opinion and order on June 21, 2022. (ECF No. 11.) In an order (ECF No. 13) entered on June 30, 2022, the Court concluded that the record before the Court did not support the conclusion that Petitioner's § 2254 petition was untimely. In a separate order (ECF No. 14) entered that same day, the Court directed Respondent to file the state court record and a response to the petition.

Respondent filed his response on December 27, 2022. (ECF No. 18.) Respondent asserts that Petitioner's grounds for relief lack merit.[1] For the following reasons, the Court concludes that Petitioner's claim that trial and appellate counsel were ineffective for failing to object to the scoring of OV 3 for purposes of Petitioner's CSC-I conviction sets forth a meritorious ground for

---

[1] Respondent also contends that some of Petitioner's grounds for relief are procedurally defaulted. (ECF No. 18, PageID.1619–1620) and others are unexhausted, (ECF No. 18, PageID.1641). A habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." See 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix,* 520 U.S. at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). With regard to habeas ground II, Petitioner's claim that trial and appellate counsel were ineffective for failing to object to the scoring of OV 3, the Court will consider Respondent's contention that Petitioner procedurally defaulted this claim. With regard to Petitioner's other grounds for relief, rather than conduct a lengthy inquiry into exhaustion and procedural default, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's claims.

federal habeas relief. The Court, therefore, will grant Petitioner's petition with respect to that

claim. The Court will deny Petitioner's petition with respect to all other grounds for relief.

<u>**Discussion**</u>

## I.     Factual Allegations

The Michigan Court of Appeals described the events underlying Petitioner's convictions

as follows:

> This case arises from numerous instances of domestic abuse perpetrated by [Petitioner] against his wife. [Petitioner] and the victim met in 2002 and lived together following their marriage in April 2010. The victim testified that [Petitioner] was verbally and physically abusive both before and during their marriage. At trial, the victim described numerous instances of abuse in addition to those giving rise to [Petitioner's] convictions. Other witnesses corroborated many of the instances of abuse described by the victim.
>
> In July 2006, following a verbal altercation regarding the manner in which [Petitioner] disciplined the victim's grandson, [Petitioner] "chopped [the victim's] finger off" by slamming a door shut while he was aware that the victim had placed her hand on the doorframe. [Petitioner] then opened the door and handed the disconnected finger to the victim. The victim's friend was present when this incident occurred and drove the victim to the hospital.
>
> In August 2010, the victim picked up [Petitioner] from a bar at approximately 1:00 a.m., explaining to [Petitioner] that she would not let him drive because he was drunk and did not have a driver's license. When they arrived home, [Petitioner] "grabbed [the victim] by the throat and hit [her] like [she] was a man. And he smashed all [of her] face and he pushed [her] aside and he took off." The victim testified that she asked [Petitioner] why he did that to her the following morning while he was in the bathroom. In response, [Petitioner] "peed up and down [her] leg like a garden hose."
>
> During the next episode of abuse, [Petitioner] threw a glass coaster at the victim's head, "slic[ing] the top of [her] head open" so that blood gushed out. The victim went to the home of [Petitioner's] friend for help, and [Petitioner] arrived at the friend's house, "dragged [the victim] out of there[,] and . . . brought [her] home."
>
> The next incident occurred when [Petitioner] returned home and found the victim babysitting a young child. The victim and [Petitioner] started arguing because [Petitioner] was upset that the victim had not asked him if she could babysit the child. [Petitioner] ultimately smashed a bottle of raspberry vodka on the side of the victim's head. Red vodka spilled on the carpet, and blood poured out of the victim's head. The victim called the child's mother, who picked up her son and the victim

and drove them back to her own apartment. The victim stayed at the mother's apartment that night, and the mother tended to the victim's injury.

In September 2011, [Petitioner] was upset because he was not going on a camping trip with the victim and members of the victim's family. After threatening to kill the victim and cut her body into "bits and pieces," [Petitioner] threw a can of beer at her. The beer missed the victim and shattered a picture, causing glass to fall on her. The victim exited the house and drove away with her daughter and grandchildren.

In November 2011, [Petitioner] kicked the victim in the stomach, and she fell into a pole. In January 2012, [Petitioner] pushed the victim, threatened to kill her, and elbowed her in the eye because she used too much water as she washed the dishes.

In the summer of 2012, tension arose between the victim and [Petitioner]. After a series of events, the victim returned to their trailer at a campground. [Petitioner] arrived at the trailer and began to pack up some of their supplies, intending to leave the victim at the trailer while he returned home. When the victim pleaded with [Petitioner] to leave some of the camping supplies at the trailer, [Petitioner] suddenly "grabbed a knife and . . . slammed [her] on [her] granddaughter's bed," holding the knife to the victim's neck and repeatedly telling her "to shut up, shut up, shut up." After [Petitioner] let the victim go, she told him that she hoped that he would never do that again. [Petitioner] then grabbed the knife and held it to her neck a second time, again telling her to "shut up." [Petitioner] then called a taxi and left with the supplies.

A week or two later, the victim was camping with her granddaughters at the trailer. At approximately 3:00 a.m., [Petitioner] cut a screen in order to unlock the trailer door. Once inside, [Petitioner] "pushed [the victim] up against the trailer" and tried to burn her face with his cigarette. When one of her granddaughters "yell[ed,] ['G]randpa, not her face, don't hurt grandma's face[,' ]" [Petitioner] grabbed the victim, threw her on the bed, and exited the trailer.

In January 2013, [Petitioner] grabbed the victim's face and neck, leaving her "esophagus . . . so swollen that [she] whispered for four days afterwards." During this incident, [Petitioner] also knocked a filling out of the victim's mouth. Later, [Petitioner] used his body to push the victim into the sink during a dispute over money, threatening to kill her. [Petitioner] also threw a metal object from a sewing machine at the victim, which cut her hand and damaged a bone.

In February 2013, during a dispute regarding the volume of the stereo, the victim grabbed a wire out of a speaker. [Petitioner] took the wire and wrapped it around the victim's neck. He then picked up a small hammer, and it appeared that he was going to hit the victim's head with it. At trial, the victim testified that she was choking and "truly, truly believed that this was the time that he was going to definitely kill [her]." The victim said to [Petitioner], "[D]o it, just do it. I don't care. I would rather be dead than be married to you. I can't take it no more." [Petitioner]

then threw the hammer on the couch, told the victim that she was not worth it, and pulled the cord off her neck.

In April 2013, [Petitioner] and the victim got into a heated discussion related to [Petitioner's] former job. [Petitioner] dived at the victim, grabbed her hair, and threw her into a wall. Two days later, while the victim was in a separate apartment inside of their home, [Petitioner] knocked on her door and stated that he had a letter for her. When the victim opened the door slightly, [Petitioner] pushed the door completely open. As the victim began to run away from [Petitioner], he chased her. [Petitioner] then grabbed her from behind, and the victim pushed the letter underneath her pajamas, yelling, "[D]on't[,] Eric, don't do this." Next, [Petitioner] put his hands down the victim's pajama pants and "started digging at the inside of [her] leg." The victim then grabbed the phone that was on a desk nearby and dialed 911. [Petitioner] then "dug [into] [her] clitoris." At trial, when the victim was asked why she called the police during the last incident when she had never done so previously, she replied, "Because I was tired of being hurt. I was tired. I wanted to live and I knew that if I didn't stop him sooner or later I wasn't gonna live."

*People v. Hanna*, No. 320268, 2015 WL 7366198, at *1–3 (Mich. Ct. App. Nov. 19, 2015). "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted).

Jury selection for Petitioner's trial occurred on November 6, 2013. (Trial Tr. I, ECF No. 17-11.) Over the course of two days, the jury heard testimony from numerous individuals, including the victim, law enforcement officers, and individuals who were acquainted with Petitioner and the victim. (Trial Tr. I & II, ECF Nos. 17-11 and 17-12.) On November 8, 2023, after about five hours of deliberation, the jury reached a guilty verdict. (Trial Tr. III, ECF No. 17-13, PageID.1036–1038.) Petitioner appeared before the trial court for sentencing on January 30, 2014. (ECF No. 17-14.)

Petitioner with the assistance of counsel, appealed his convictions and sentences to the Michigan Court of Appeals, raising several issues in a counseled brief as well as a *pro per* supplemental brief. In an opinion entered on November 19, 2015, the court of appeals affirmed Petitioner's convictions and sentences. *Hanna*, 2015 WL 7366198, at *1. The Michigan Supreme

Court denied Petitioner's application for leave to appeal on June 28, 2016. *See People v. Hanna*, 880 N.W.2d 240 (Mich. 2016).

On June 29, 2017, Petitioner filed a motion for relief from judgment pursuant to Michigan Court Rule 6.500. (ECF No. 17-15.) Over the following two years, by way of motions, briefs, supplements, and addendums, Petitioner asserted the challenges that he now raises by way of this petition. On September 24, 2019, the trial court held a hearing regarding Petitioner's motion. (ECF No. 17-25, PageID.1433–1445.) On February 10, 2020, the trial court entered an order denying Petitioner's Rule 6.500 motion "for the reasons more fully stated on the record" at the September 24, 2019, hearing. (ECF No. 17-22.) The Michigan Court of Appeals and Michigan Supreme Court denied Petitioner's applications for leave to appeal on March 18, 2021, and March 8, 2022, respectively. (ECF No. 17-25, PageID.1405; ECF No. 17-26, PageID.1562.) This § 2254 petition followed.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020)

7

(internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

"[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d

at 721. Then, the petitioner's claim is reviewed *de novo. Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III. Discussion

### A. Ground I—Habitual Offender Notice

Petitioner's first ground for relief is that the prosecution failed to file the written notice of intent and supplemental information charging Petitioner as a habitual offender within the time for doing so mandated by Mich. Comp. Laws § 769.13. (ECF No. 17-15, PageID.1080.) That statute provides:

> the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12[ ] of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

Mich. Comp. Laws § 769.13(1) (footnote omitted). Review of the parties' briefs indicates that the issue was not whether the prosecuting attorney filed written notice of the enhanced sentence as required by Mich. Comp. Laws § 769.13(1), but whether the prosecuting attorney had filed the proof of service of that notice as required by Mich. Comp. Laws § 769.13(2).

While Petitioner's collateral challenge was pending, the Michigan Court of Appeals, in a published opinion, had ruled as follows:

> The purpose of the notice requirement "'is to provide the accused with notice, at an early stage in the proceedings, of the potential consequences should the accused be convicted of the underlying offense.'" *People v. Morales*, 240 Mich. App. 571, 582, 618 N.W.2d 10 (2000) (citation omitted). The failure to file a proof of service of the notice of intent to enhance the defendant's sentence may be harmless if the defendant received the notice of the prosecutor's intent to seek an enhanced sentence and the defendant was not prejudiced in his ability to respond to the habitual-offender notification. *People v. Walker*, 234 Mich. App. 299, 314–315, 593 N.W.2d 673 (1999).
>
> In this case, defendant is correct that the prosecutor failed to file a proof of service of the notice of intent to enhance defendant's sentence. However, the error is harmless because defendant had actual notice of the prosecutor's intent to seek an

> enhanced sentence and defendant was not prejudiced in his ability to respond to the
> habitual-offender notification.

*People v. Head*, 917 N.W.2d 752, 763 (Mich. Ct. App. 2018). Then, just weeks before the hearing

on Petitioner's motion, the Michigan Supreme Court had denied an application for leave to appeal

on a case that would have provided an opportunity to consider that issue. *People v. Straughter*,

930 N.W.2d 384 (Mich. 2019). The holding in *Head*, and the Michigan Supreme Court's decision

leaving that holding undisturbed, were discussed by the trial court, Petitioner, his counsel, and the

prosecutor during an August 1, 2019, hearing. (Mot. Hr'g Tr., ECF No. 17-28, PageID.1423–

1430.) The state court record conclusively discloses that Petitioner had actual notice of the

sentencing enhancement from the very beginning. (*see* ECF No. 17-2, PageID.348.) That fact

undoubtedly lies at the foundation of the trial court's eventual determination that Petitioner's

challenge to the enhancement or counsel's failure to challenge the enhancement was "without

merit." (Mot. Hr'g Tr., ECF No. 17-25, PageID.1442.)

"[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in

custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v.

Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). Here, Petitioner's assertion that he

did not receive proper notice under the Michigan habitual offender statute is a claim based on a

state statute, not the federal constitution. The claim is not cognizable on habeas review.

Moreover, the state courts rejected the claim. As the Supreme Court explained in *Estelle*,

"it is not the province of a federal habeas court to re-examine state-court determinations on state-

law questions." 502 U.S. at 67–68. The decision of the state courts on a state law issue is binding

on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*,

546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law,

11

including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Although the sufficiency of the sentence enhancement under state law has already been conclusively resolved, the issue of constitutionally adequate notice remains. The Fourteenth Amendment's Due Process Clause mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him so as to provide him an adequate opportunity to prepare his defense. *See Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977). This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. *Combs v. Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976). Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial. *Id.* "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)). "An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira*, 806 F.2d at 639. In other words, as long as "sufficient notice of the charges is given in some . . . manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Watson*, 558 F.2d at 338.

Here, Petitioner cannot legitimately claim that he did not receive sufficient notice to allow him to defend against the habitual offender notice. The record indicates that on April 9, 2013, the prosecution filed a habitual offender notice. (ECF No. 17-2, PageID.348.) The prosecution filed an amended complaint that changed the habitual offender notice to habitual offender, fourth offense, mandatory 25-year sentence on April 16, 2013. (*Id.*) Moreover, at Petitioner's arraignment

on June 11, 2013, the trial court explicitly informed Petitioner that the prosecution had charged him with being a fourth-offense habitual offender who was subject to a mandatory 25-year minimum sentence. (ECF No. 17-6, PageID.454–455.) Petitioner indicated his understanding. (*Id.*, PageID.456.) Petitioner, therefore, had ample notice—from the outset—that the prosecution intended to seek an enhanced sentence premised upon the habitual offender statute. Petitioner fails to assert that this notice was insufficient to permit him to adequately prepare a defense. Thus, Petitioner's claim regarding the notice does not implicate his due process rights. Because Petitioner has failed to demonstrate that the state courts' rejection of this claim is contrary to, or an unreasonable application of, clearly established federal law, he is not entitled to relief on habeas ground I.

### B.    Grounds II, III, IV, and V—Ineffective Assistance of Counsel

Petitioner asserts numerous claims of ineffective assistance of trial and appellate counsel as habeas grounds II, III, IV, and V.

#### 1.    Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic

decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The *Strickland* standard that applies to trial counsel also applies to appellate counsel. However, a criminal appellant has no constitutional right to have every non-frivolous issue raised on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the

14

distorting effects of hindsight." *Strickland*, 466 U.S. at 689. And then scrutiny of the state court's

scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of

that double deference, the question before the habeas court is "whether there is any reasonable

argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d

723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the

difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing

*Harrington*, 562 U.S. at 102)).

During oral argument regarding Petitioner's Rule 6.500 motion, the trial court recognized

that Petitioner's various ineffective assistance claims were governed by the standard set forth in

*Strickland*. (ECF No. 17-25, PageID.1441.) The state court's application of the correct standard

eliminates the possibility that the resulting decision is "contrary to" clearly established federal law.

As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different,"
> "opposite in character or nature," or "mutually opposed." Webster's Third New
> International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests
> that the state court's decision must be substantially different from the relevant
> precedent of this Court. The Fourth Circuit's interpretation of the "contrary to"
> clause accurately reflects this textual meaning. A state-court decision will certainly
> be contrary to our clearly established precedent if the state court applies a rule that
> contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not

"contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our
> cases to the facts of a prisoner's case would not fit comfortably within
> § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court
> decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland*
> [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and,
> applying that framework, rejects the prisoner's claim. Quite clearly, the state-court
> decision would be in accord with our decision in *Strickland* as to the legal
> prerequisites for establishing an ineffective-assistance claim, even assuming the
> federal court considering the prisoner's habeas application might reach a different
> result applying the *Strickland* framework itself. It is difficult, however, to describe

such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, Petitioner can only overcome the deference afforded state court decisions if the state court's determinations were based on an unreasonable application of *Strickland* or if the state court's resolutions were based on unreasonable determinations of the facts. 28 U.S.C. 2254(d).

The trial court orally pronounced its reasoning for denying Petitioner's Rule 6.500 motion. The court did not address each claim separately, but instead stated:

Throughout his motion and brief, [Petitioner] claims that appellate counsel was ineffective for not raising the issues he now raises. However, failure to raise those issues as Mr. Freed just suggested the reasons could have been numerous were not deficient in any way. [Petitioner] raises four major challenges for which he affixes blame for prejudice for not raising by his appellate counsel. None of which are issues that would rise to the level to allow this Court to grant him the relief he now seeks.

[Petitioner] argues that his counsel was ineffective for failing to raise the issues of the proper notice of intent to seek enhanced sentence, permissibly added charges at bindover, the correct scoring of offense variable number three, and the racial make-up of the jury. [Petitioner] places the blame for not raising these issues squarely on the appeal—squarely on the shoulders of his appellate attorney at the time ignoring the fact that he also raised several challenges in those courts himself. [Petitioner] cannot prove good cause for not raising the issues as required by MCR 6.508(D)(1) as []he had the opportunity and failed to raise the issues.

One of the exceptions to the rule is if [Petitioner] suffered from ineffective assistance of counsel. However, [Petitioner] did not suffer this. Instead, in regards to each one of these issues raised by [Petitioner], counsel competently represented [Petitioner]. None of the issues presented by [Petitioner] would have changed the outcome of the proceedings and thus [Petitioner] did not suffer prejudice. In fact, he may have received a benefit.

Additionally, to place . . . the entirety of the blame on the counsel is disingenuous on behalf of [Petitioner]. During both of his appeals to the Court of Appeals and the Michigan Supreme Court, [Petitioner] himself raised several issues. None of which he raises here. Therefore, on the two fronts, [Petitioner] must fail here. He was not the victim of ineffective assistance of trial counsel or appellate counsel,

and he himself had the opportunity to raise the issues himself in both the Court of
Appeals and the Michigan Supreme Court. For these reasons stated on the record
this afternoon, [Petitioner's] motion for a 6500 hearing [is] denied.

(ECF No. 17-25, PageID.1441–1443.) With this background in mind, the Court will determine

whether the trial court reasonably applied the *Strickland* standard for Petitioner's claims of

ineffective assistance of counsel.

### 2.    Failure to Object to Scoring of OVs

#### a.    OV 3

In habeas ground II, Petitioner faults trial and appellate counsel for not objecting to the

scoring of OV 3 with respect to his sentence for CSC-I. (ECF No. 17-15, PageID.1070.)

#### (i)    Procedural Default

Respondent contends that habeas ground II is procedurally defaulted because Petitioner

failed to raise his ineffective assistance of trial counsel claims on direct appeal. (ECF No. 18,

PageID.1641.)

When a state-law default prevents further state consideration of a federal issue, the federal

courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v.

Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine

whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider

whether (1) the petitioner failed to comply with an applicable state procedural rule, (2) the state

court enforced the rule so as to bar the claim, and (3) the state procedural default is an "adequate

and  independent"  state  ground  properly  foreclosing  federal  habeas  review  of  the  federal

constitutional claim. *See Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004), *abrogated on other

grounds by Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc); *accord Lancaster*,

324 F.3d at 436–37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274

F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a

claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette*, 624 F.3d at 291.

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551–52. The miscarriage-of-justice exception can only be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new, reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

At a hearing held regarding Petitioner's Rule 6.500 motion on September 24, 2019, the trial court noted, *inter alia*, that "Michigan Court Rule 6.508(D) does not allow the relief being requested by the defendant as the defendant cannot prove good cause for failing to raise these issues in his direct appeals of his sentence. Nor can he prove actual prejudice from irregularities from that sentence." (ECF No. 17-25, PageID.1440.) The trial court then went on to determine that Petitioner "was not the victim of ineffective assistance of trial counsel or appellate counsel." (*Id.*, PageID.1443.) The Sixth Circuit has held that Rule 6.508(D) is an independent and adequate state ground for purposes of denying review of a federal constitutional claim. *See Schultz v. Tanner*, No. 23-1357, 2023 WL 7119587, at *3 (6th Cir. Sept. 28, 2023) (citing *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). The trial court's discussion of the merits of Petitioner's claim in

addition to invoking Rule 6.508(D) does not change this analysis. *See Northrop v. Horton*, 779 F. App'x 312, 315 (6th Cir. 2019) (citations omitted).

In his filings, Petitioner suggests that cause exists to excuse his default because appellate counsel failed to raise a claim regarding trial counsel's failure to object to the scoring of OV 3 on direct appeal. Ineffective assistance of counsel can constitute cause for a procedural default. *See Carrier*, 477 U.S. at 492. The record reflects that Petitioner asserted his claim of ineffective assistance of appellate counsel throughout his Rule 6.500 proceedings. Petitioner, therefore, has adequately demonstrated cause for purposes of his procedural default.

The Sixth Circuit has recently noted that "[t]he prejudice requirement to overcome a procedural default is effectively the same as the prejudice requirement for ineffective-assistance claims under *Strickland*." *Schultz*, 2023 WL 7119587, at *3. The Court, therefore, will discuss the merits of Petitioner's claim below to discern whether he has adequately demonstrated cause and prejudice to overcome his procedural default.

### (ii)     Merits

OV 3 scores physical injuries to victims. *See* Mich. Comp. Laws § 777.33. Pertinent here, an offender receives 5 points under OV 3 if "[b]odily injury not requiring medical treatment occurred to a victim." *Id.* § 777.33(1)(e). However, the statute explicitly states: "Do not score 5 points if bodily injury is an element of the sentencing offense." *Id.* § 777.33(2)(d). Bodily injury is an element of CSC-I. *See* Mich. Comp. Laws § 750.520b.[2] Petitioner, therefore, is correct that

---

[2] There are a variety of circumstances where sexual penetration constitutes CSC-I Mich. Comp. Laws § 750.520b. Petitioner was charged with CSC-I based Mich. Comp. Laws § 750.520b(1)(f) which provides "A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and . . .[t]he actor causes personal injury to the victim and force or coercion is used to accomplish the sexual penetration." *Id.*; *see also* (First Amended Felony Information, ECF No. 17-3, PageID.350.)

because he was convicted of CSC-I, he could not be scored for OV 3 with respect to his CSC-I sentence.

As an initial matter, the record before the Court is not a model of clarity with regard to how this claim was resolved in the state courts. Petitioner raised this issue in his initial *pro per* Rule 6.500 motion. (ECF No. 17-15, PageID.1070.) In response, the State agreed that Petitioner was erroneously assessed 5 points for OV 3 for his CSC-I conviction. (ECF No. 17-16, PageID.1110.) The State noted that the points should not have been assessed because the physical injury to the victim "was considered by the elements of the sentencing offense." (*Id.*) The State argued, however, that counsel was not ineffective for challenging the scoring because the failure to do so "protected [Petitioner] from having additional OV points assessed for OV 10." (*Id.*, PageID.1111.) Furthermore, counsel's failure to do so "prevented the issue of the habitual offender status from being raised. [Petitioner] was quite clearly sentenced incorrectly as a Habitual Offender 3rd Offense when he was a Habitual Offender 4th Offense." (*Id.*)

The trial court held a hearing regarding this issue on August 1, 2019. At that hearing, the State noted that Petitioner was entitled to some type of resentencing because of the error in scoring OV 3. (ECF No. 17-25, PageID.1423–1424.) However, when the parties reconvened for a hearing on September 24, 2019, the trial judge noted that none of the issues presented by Petitioner would have changed the outcome of the proceedings and thus [Petitioner] did not suffer prejudice." (*Id.*, PageID.1442.) When Petitioner asked about resentencing, the trial court responded that it was not "moving to resentencing." (*Id.*, PageID.1443.) The record before this Court, however, is completely silent as to why a resentencing did not occur.

Petitioner contends that both trial and appellate counsel were ineffective for failing to challenge the scoring of OV 3 because that scoring increased his total OV level "from 36 points to

41 points[,] which put[] [him] in a higher OV level of III instead of II which increased [his] minimum sentencing guidelines by 6 years and 1 month on the minimum." (ECF No. 17-15, PageID.1088.) Petitioner has provided two different presentence investigation reports (PSIRs) with his § 2254 petition. The first PSIR was prepared prior to Petitioner's sentencing on January 30, 2014. Notably, however, that PSIR reflects that, contrary to Petitioner's argument, OV 3 was scored at zero for Petitioner's CSC-I conviction. (ECF No. 1-1, PageID.106.) The agent who prepared the report noted that for purposes of the CSC-I conviction, Petitioner's total OV point total was 36, and that his OV level was II. (*Id.*) Based on those factors, the agent indicated that Petitioner's guidelines called for a minimum sentence between 51 and 127 months for the CSC-I conviction. (*Id.*)

The record, however, reflects that the trial court did not rely upon the agent's PSIR calculations at Petitioner's January 30, 2014, sentencing. At sentencing, Petitioner's counsel noted that 81 months was "the low end of the guideline on the CSC charge." (ECF No. 17-14, PageID.1054.) When asked by the trial court if she agreed that Petitioner's guidelines range for the CSC-I conviction was 81 to 202 months, counsel stated that she agreed. (*Id.*, PageID.1055.) Counsel indicated that she agreed to that range because she had discussed it "at length several times" with the agent who prepared the PSIR "when [they] were amending things and [they] agreed to that." (*Id.*) However, no explanation for the stark difference between the minimum guidelines range set forth in the PSIR and the range relied upon at sentencing appears in the record before this Court.

Moreover, the sentencing information report sheet signed by the trial judge clearly indicates that with respect to the CSC-I conviction, Petitioner was assessed 5 points for OV 3, that his total OV point total was 41, and that his OV level was III. (ECF No. 23-1, PageID.1734.) That

report notes that Petitioner's guidelines minimum range was 81 to 202 months. (*Id.*) Petitioner was ultimately sentenced to a minimum of 16 years and 8 months and a maximum of 60 years for the CSC-I conviction. (ECF No. 17-14, PageID.1062.)

As noted above, Petitioner has attached a second PSIR to his § 2254 petition. That PSIR appears to have been prepared in conjunction with proceedings on Petitioner's Rule 6.500 motion. Because of the parties' agreement that OV 3 was improperly scored prior to Petitioner's sentencing, that PSIR scored OV 3 at zero. (ECF No. 1-1, PageID.71.) With a score of zero for OV 3, Petitioner's total OV score for his CSC-I offense would be 36, and his OV level would be II. (*Id.*) Under that scenario, Petitioner's guidelines called for a minimum sentence between 51 and 127 months. (*Id.*)

"[A]n attorney's failure to object to an error in the . . . calculation of the guidelines—if left uncorrected by the district court—can be grounds for finding deficient performance." *Howard v. United States*, 743 F.3d 459, 464 (6th Cir. 2014). Under the circumstances set forth above, the Court can fathom no reason for trial and appellate counsel's failure to object to the scoring of OV 3. The statute governing the scoring of OV 3 clearly sets forth that 5 points should not be scored if "bodily injury is an element of the sentencing offense." Mich. Comp. Laws § 777.33(2)(d). By convicting Petitioner of CSC-I, the jury clearly found that bodily injury had occurred, as personal injury is an element of CSC-I. *See id.* § 750.520b(1)(f). In light of the statutory language, as well as the later agreement during Petitioner's Rule 6.500 proceedings that OV 3 was erroneously scored for purposes of his CSC-I conviction, Petitioner has met his burden of demonstrating that trial and appellate counsel's failure to object to the scoring fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

As set forth above, however, a petitioner is not entitled to relief with respect to a claim of ineffective assistance of counsel if counsel's error had no effect on the judgment. *Id.* at 691. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 562 U.S. at 112). "Where ineffective assistance at sentencing is asserted, prejudice is established if the movant demonstrates that his sentence was increased by the deficient performance of his attorney." *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007).

Respondent contends that Petitioner cannot demonstrate prejudice from any failure by counsel to object to the scoring of OV 3. Specifically, Respondent argues:

> Rather than showing (or attempting to show) that his sentence would have been different if OV 3 had been scored at zero, [Petitioner] seems to rely on the error alone to establish prejudice. But that is not enough. [Petitioner] cannot show that he was *prejudiced* by the decision of his counsel as is required by *Strickland*. This is because OV 10 was *also* wrongly scored at zero points. OV 10 contemplates the exploitation of a vulnerable victim during the commission of the offense. Five points should be assessed if the offender exploited a victim by his difference in size or strength. Mich. Comp. Laws § 777.40(3)(c). In this case, [Petitioner] clearly used his strength and size to exploit the victim by grabbing her and physically controlling her in the manner described by the victim in her impact statement. Therefore, five points should have been scored for OV 10. Arguably, ten points could have been scored as [Petitioner] exploited his domestic relationship with the victim. Mich. Comp. Laws § 777.40(1)(b). This is because the victim was [Petitioner's] spouse who had systematically been abused by [Petitioner] prior to the sexual assault. The assault also occurred during an argument regarding domestic matters in the marital home. Here, even if the scoring of OV 3 was challenged, [Petitioner] cannot show that it resulted in an increased sentence because additional points could have been assessed under OV 10 at resentencing and his guidelines would have remained the same.
>
> Additionally, the failure to raise issues with the scoring also prevented the issue of the habitual offender status from being raised. [Petitioner] was sentenced as a third habitual offender *when he was in fact a fourth habitual offender*. Enhancing [Petitioner']s sentence from a third habitual to a fourth habitual offender would have increased the penalty from 1.5 times the statutorily allowed time to 2 times the statutorily allowed time.

. . .

23

And this analysis is corroborated by [Petitioner's] appellate attorney during his post-conviction proceedings. At the hearing on the motion for relief from judgment, Ms. Prater stated that she had cautioned [Petitioner] about the ramifications and dangers of resentencing based on the arguments made in the motion for relief from judgment, especially if he was awarded resentencing through the decision—which would result in two 25-year mandatory minimums on the CSC and assault convictions."

(ECF No. 18, PageID.1656–1659 (emphasis in original) (internal citations omitted).)

Respondent's argument, however, relies upon sheer speculation that Petitioner would be subject to having OV 10 scored and would also be subject to being resentenced as a fourth-offense habitual offender. Both PSIRs indicate that OV 10 was scored at zero for the CSC-I offense. (ECF No. 1-1, PageID.71, 106.) At no time during Petitioner's sentencing hearing on January 30, 2024, did the prosecution object to the failure to score OV 10. Nor did the prosecution raise any arguments concerning Petitioner's habitual offender status. Moreover, the prosecution did not pursue a cross-appeal to challenge these issues. Additionally, in the PSIR prepared in conjunction with Petitioner's 6.500 motion, the agent recommended that for the CSC-I conviction, Petitioner be resentenced to serve a minimum of 10 years and 6 months and a maximum of 30 years—much less than he was sentenced to on January 30, 2024. (*Id.*, PageID.82.) Notably, the agent also indicated that Petitioner was subject to resentencing as a third-offense habitual offender. (*Id.*) In short, nothing in the record supports a finding that Petitioner would conclusively be subject to having OV 10 scored and be subject to the fourth-offense habitual offender enhancement upon resentencing.

As noted *supra*, Petitioner was sentenced to a minimum of 16 years and 8 months (200 months) and a maximum of 60 years for his CSC-I conviction. (ECF No. 17-14, PageID.1062.) Thus, Petitioner's minimum sentence was two months shy of the upper limit of the 81 to 202 months guidelines range relied upon by the trial court. However, because OV 3 should not have

24

been scored, Petitioner's correct guidelines range for his CSC-I conviction called for a minimum sentence between 51 and 127 months. (ECF No. 1-1, PageID.71.)

Clearly, a minimum sentence of 127 months is far less than the 200-month minimum imposed by the trial court. Moreover, because Petitioner's sentences were imposed to run concurrently, his CSC-I sentence, which is the lengthiest sentence imposed, governs Petitioner's minimum date—i.e., the date upon which he will be eligible for parole consideration—and his maximum discharge date. In light of the stark difference in the guidelines when OV 3 is not scored, counsel's failure to object is inexplicable and operated to prejudice Petitioner.

In sum, Petitioner has demonstrated that trial and appellate counsel rendered ineffective assistance by failing to object to the scoring of OV 3 for purposes of Petitioner's CSC-I conviction. Because Petitioner has demonstrated that he was prejudiced by counsel's failure to object, he has adequately demonstrated cause and prejudice to overcome his procedural default of this claim. Petitioner, therefore, has presented the rare case where habeas relief is warranted, and the Court will grant his § 2254 petition with respect to this claim of ineffective assistance of trial and appellate counsel.

### b.    OV 12

As habeas ground V, Petitioner faults counsel for failing to object to the scoring of OV 12. (ECF No. 1-1, PageID.36.)

OV 12 scores "contemporaneous felonious criminal acts." Mich. Comp. Laws § 777.42(1). Scoring OV 12 depends on the number of contemporaneous felonious criminal acts that are present. *See id.* When scoring OV 12, "[a] felonious criminal act is contemporaneous if . . . [t]he act occurred within 24 hours of the sentencing offense . . . [and] the act has not and will not result in a separate conviction." *See id.* § 777.42(2)(a). The Michigan Supreme Court has defined the "sentencing offense in the context of OVs as the crime of which the defendant has been convicted

and for which he or she is being sentenced." *People v. Carter*, 931 N.W.2d 566, 569 (Mich. 2019) (quotation omitted). Accordingly, when scoring OV 12, "a court must look beyond the sentencing offense and consider only those separate acts or behavior that did not establish the sentencing offense." *People v. Light*, 803 N.W.2d 720, 724–25 (Mich. Ct. App. 2010).

Petitioner contends that counsel should have objected to the scoring of OV 12 because "any contemporaneous conduct resulted in a separate conviction which was counted in OV 13. Conduct in OV 12 cannot be scored in OV 13 which is what happened here. All of the other acts were not part of the single CSC 1st which is the sentencing offense in question." (ECF No. 1-1, PageID.43.) OV 13 sets forth scoring for continuing patterns of criminal behavior. *See* Mich. Comp. Laws § 777.43. Furthermore, conduct that is scored in either OV 11 or OV 12 cannot be scored under OV 13 unless it involves "offenses related to membership in an organized criminal group or that are gang-related." *Id.* § 777.43(2)(c).

The record reflects that for the CSC-I conviction, as well as for one each of the AGBH and felonious assault convictions, Petitioner received a scoring of 1 for OV 12 and a scoring of 25 for OV 13. (ECF No. 1-1, PageID.67–69.) Under OV 12, a defendant receives one point if one contemporaneous felonious criminal act was involved. *See* Mich. Comp. Laws § 777.42(1)(f). Under OV 13, 25 points are assessed if the offense "was part of a pattern of felonious criminal activity involving a combination of 3 or more crimes against a person." *Id.* § 777.43(1)(c).[3]

First, any underlying claim by Petitioner that OV 12 was scored incorrectly is not cognizable on habeas review. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (noting that federal

---

[3] OV 13 also provides for 25 points to be assessed if the "offense was part of a pattern of felonious criminal activity directly related to causing, encouraging, recruiting, soliciting, or coercing membership in a gang or communicating a threat with intent to deter, punish, or retaliate against another for withdrawing from a gang." *See* Mich. Comp. Laws § 777.43(1)(b). It is clear that the 25 points were not assessed to Petitioner pursuant to this subsection.

courts do not normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief). Moreover, Petitioner offers no evidence, much less clear and convincing evidence, to overcome the state court's factual determination that counsel was not ineffective for failing to challenge the scoring of OV 12. Notably, Petitioner does not even provide detail regarding the contemporaneous felonious criminal act that he believes was improperly scored twice under OV 12 and OV 13. He simply relies upon the conclusory arguments that he presented to and that were rejected by the state court. Because Petitioner has not demonstrated that the state court's rejection of his claim of ineffective assistance of counsel is contrary to, or an unreasonable application of, *Strickland*, Petitioner is not entitled to relief on habeas ground V.

### 3.      Failure to Challenge Additional Charges

In habeas ground III, Petitioner contends that appellate counsel was ineffective for failing to raise on direct appeal the fact that additional charges had been lodged against Petitioner at bindover. (ECF No. 17-15, PageID.1070.) According to Petitioner, "[a]dding a charge without a motion from the prosecutor is a violation of" state law. (*Id.*, PageID.1089.) Petitioner suggests that this issue is "open, obvious[,] and substantial, and would have been outcome determinative if raised on direct appeal." (*Id.*, PageID.1090.)

As thoroughly discussed *infra* in Part D, Petitioner has not demonstrated that his due process rights were violated in any way by the addition of charges. Thus, because Petitioner's underlying claim lacks merit, "appellate counsel's failure to raise that claim on direct appeal cannot be deemed constitutionally deficient performance." *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003). Petitioner has not demonstrated that the trial court's rejection of his ineffective assistance

27

of appellate counsel claim is contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief with respect to habeas ground III.

### 4.      **Failure to Assert *Batson* Challenge**

In habeas ground IV, Petitioner faults trial and appellate counsel for not asserting a *Batson* challenge during voir dire because there were no African-Americans in the jury pool. (ECF No. 17-15, PageID.1094.) According to Petitioner, the 2010 United States Census indicated that 6.5% of the Chippewa County population was African-American. (*Id.*, PageID.1096.) Despite that, there were no African-Americans present in the jury pool, which Petitioner contends "unfairly forc[ed] [him] to a bias[ed] trial." (*Id.*)

As an initial matter, it appears that Petitioner's reliance on *Batson* is misplaced. In *Batson*, the Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from challenging potential jurors solely on the basis of their race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). A defendant may establish a prima facie case of purposeful discrimination in the selection of a petit jury premised on evidence concerning the prosecutor's exercise of peremptory challenges. *Id.* at 96. Here, however, Petitioner is not asserting that the prosecutor used peremptory challenges to exclude potential jurors because of their race. Instead, Petitioner contends that the jury pool did not constitute a representative cross-section of the community because it did not include any African-Americans.

It is well established that "the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial" and "is fundamental to the American system of justice." *Taylor v. Louisiana*, 419 U.S. 522, 528 (1975). The fair cross-section requirement, however, applies to the venire from which a jury is drawn, and not the petit jury itself. *See id.* at 538 (noting that the Court was "impos[ing] no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups

28

in the population"). To establish a prima facie violation of the fair cross-section requirement, a

defendant must show:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979).

Here, Petitioner fails to provide any evidence as to how his jury pool was selected, nor does

he detail how that process was discriminatory other than to suggest there were no African-

Americans in the jury pool. The Michigan Court of Appeals has noted that "[m]erely showing one

cause of alleged underrepresentation does not rise to a 'general' underrepresentation that is

required for establishing a prima facie case." *People v. Howard*, 575 N.W.2d 16, 22 (Mich. Ct.

App. 1997). Instead, Petitioner is required "to show that the underrepresentation of the [distinctive

group], generally and on his venire, was due to their systematic exclusion in the jury-selection

process." *Duren*, 439 U.S. at 366. "[D]efendants 'must show more than that their particular panel

was unrepresentative[;] *Duren* states that we look at the 'venires' from which 'juries' are selected."

*United States v. Odeneal*, 517 F.3d 406, 412 (6th Cir. 2008) (emphasis added).

At best, Petitioner has conclusorily stated that African-Americans were underrepresented

in his jury venire. Moreover, any assertion by Petitioner that he was tried by a biased jury simply

because no African-Americans were present in the jury pool simply lacks merit. "Defendants are

not entitled to a jury of any particular composition." *Taylor*, 419 U.S. at 538. Because Petitioner's

underlying challenge to the jury pool is conclusory, the Court cannot agree with Petitioner that

trial and appellate counsel were ineffective for failing to assert a challenge to the makeup of the

jury pool. Petitioner has not demonstrated that the trial court's rejection of his ineffective

assistance claim was contrary to, or an unreasonable application of, *Strickland*, and so Petitioner is not entitled to relief on habeas ground IV.

### C.      Ground VI—Search Warrant and Related Ineffective Assistance

In his sixth ground for relief, Petitioner asserts that "the search [was] illegal and void in violation of the State and Federal Constitutions where the search warrant was not signed by the magistrate and the officers conducting the search had ample opportunity to correct the error but failed to do so." (ECF No. 1-1, PageID.39.) Petitioner also suggests that trial and appellate counsel were ineffective for failing to object to the unsigned warrant. (*Id.*)

Typically, Fourth Amendment search and seizure issues are not cognizable on habeas review under *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

For the *Stone* doctrine to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state court determination of the claim to have been in error. *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001). It is beyond dispute that Michigan has a state procedural mechanism that provides a defendant a full and fair opportunity to raise a Fourth Amendment claim prior to trial. Moreover, Petitioner has not alleged any facts

showing that the state's mechanism had broken down. Therefore, without something more, *Stone* bars the Court's consideration of the merits of Petitioner's Fourth Amendment claim.

As noted above, however, Petitioner argues that counsel rendered ineffective assistance by failing to object to the unsigned warrant. In *Kimmelman v. Morrison*, 477 U.S. 365 (1986), the Supreme Court stated: "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id.* at 375; *see also Richardson v. Palmer*, 941 F.3d 838, 857 (6th Cir. 2019). Accordingly, Petitioner's ineffective assistance claim requires consideration of the merits of Petitioner's Fourth Amendment claim and, to the extent that Petitioner's Fourth Amendment claim lacks merit, his ineffective assistance claim necessarily fails.

The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment requires "only three things" with respect to search warrants. *Dalia v. United States*, 441 U.S. 238, 255 (1979). First, the warrant must be issued by a "neutral and detached" magistrate "capable of determining whether probable cause exists." *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972). Second, there must be a finding of probable cause. *See* U.S. Const. amend. IV. Third, the search warrant must "particularly describe[e] the place to be searched, and the . . . things to be seized." *Id.*; *see also Maryland v. Garrison*, 480 U.S. 79, 84–85 (1987).

31

Petitioner does not dispute that these three requirements were met. Rather, he asserts that the magistrate never signed the search warrant. In 1984, the Supreme Court set forth a "good-faith" exception to Fourth Amendment violations. *See United States v. Leon*, 468 U.S. 897 (1984). The Supreme Court noted that the Fourth Amendment's exclusionary rule is not to be "applied to exclude the use of evidence obtained by officers acting in reasonable reliance on a detached and neutral magistrate judge's determination of probable cause in the issuance of a search warrant that is ultimately found to be invalid." *United States v. Taylor*, 119 F.3d 625, 629 (8th Cir. 1997) (citing *Leon*, 468 U.S. at 905, 922). The good-faith exception does not apply in the following four circumstances: (1) when the affiant misleads the issuing judge by including information in the affidavit that the affiant knows or should know is false; (2) when the issuing judge completely abandons his judicial role; (3) when the affidavit includes so little indicia of probable cause that belief in the existence of such cause is unreasonable; and (4) when the warrant is so facially deficient that the executing officer cannot reasonably presume that it is valid. *Leon*, 468 U.S. at 923.

Notably, the "exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.* at 916. The same year that *Leon* was decided, the Supreme Court refused to conclude that suppression was necessary in a case where evidence was seized based upon a clerical error made by the issuing authority. *See Massachusetts v. Sheppard*, 468 U.S. 981, 989–91 (1984). Subsequently, several courts have concluded that an issuing authority's failure to sign a warrant is the type of clerical error contemplated by the *Sheppard* Court. *See, e.g.*, *United States v. Hessman*, 369 F.3d 1016, 1022–23 (8th Cir. 2004) (concluding that law enforcement officers' reliance on an unsigned search warrant was not objectively unreasonable); *United States v. Lipford*, 203 F.3d 259, 269–70 (4th Cir. 2000) (finding no Fourth Amendment

violation where officers presented the defendant with an unsigned copy of the search warrant before searching his home); *United States v. Kelley*, 140 F.3d 596, 605 (5th Cir. 1998) (rejecting a "per se rule that an unsigned and undated warrant can never suffice" and applying the good-faith exception to uphold the decision to not suppress the evidence at issue); *United States v. Diaz-Lopez*, No. 89-30270, 1990 WL 194268, at *1 (9th Cir. Dec. 6, 1990) (holding that the good-faith exception applied to a search conducted pursuant to an unsigned search warrant).

Here, Petitioner has not presented any evidence to suggest that officers' reliance on the unsigned warrant was unreasonable. Accordingly, in light of the foregoing authority, the good-faith exception to the Fourth Amendment's exclusionary rule would apply to the execution of the search warrant. Any argument otherwise by counsel would have been futile, and counsel cannot be considered ineffective for failing to raise meritless arguments. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013); *see also Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008).

In his habeas filings, Petitioner recognizes that the Michigan Court of Appeals has held that a search and seizure made pursuant to an unsigned warrant under circumstances requiring a warrant violates the Michigan Constitution. (ECF No. 1-1, PageID.44–45); *see also People v. Hentkowski*, 397 N.W.2d 255, 258 (Mich. Ct. App. 1986). The court of appeals explained the signature requirement under state law as such: (1) the signature serves to distinguish a valid warrant from an invalid warrant; (2) the Michigan Constitution requires the issuance of a warrant, and issuance occurs only when the warrant is signed and provided to the proper authority; (3) the signature requirement "presses upon the magistrate the seriousness and importance of his action in issuing a search warrant"; and (4) the signature requirement is not overly burdensome and prevents abuse of the system. *Hentkowski*, 397 N.W.2d at 259. The court of appeals explicitly specified that its decision was based on the Michigan Constitution only and that Michigan Courts

have "refused to adopt a [good-faith] exception in connection with the exclusionary rule of the Michigan Constitution." *Id.* at 258 n.1.

Subsequently, however, the Michigan Court of Appeals rejected the *Hentkowski* conclusion in binding precedent, holding that an unsigned warrant is presumed to be invalid, but that the presumption "may be rebutted with evidence that, in fact, the magistrate or judge did make a determination that the search was warranted and did intend to issue the warrant before the search." *People v. Barkley*, 571 N.W.2d 561, 564 (Mich. Ct. App. 1997). After all, the court has noted, "[a] warrant's validity rests on the magistrate's probable cause determination, after which signing the warrant is a 'purely ministerial task.'" *People v. Neill*, No. 310561, 2013 WL 466283, at *2 (Mich. Ct. App. Feb. 7, 2013).

Notably, the record before the Court does not contain a copy of the search warrant at issue. Petitioner, however, has presented no evidence to suggest that the magistrate did not make a probable cause determination and did not intend to issue the warrant. Furthermore, given the victim's detailed testimony concerning the numerous instances of abuse she suffered at Petitioner's hands, Petitioner has not demonstrated that counsel's failure to file a motion to suppress premised upon *Hentkowski* prejudiced him in any way. Petitioner, therefore, cannot show that the state courts' rejection of this ineffective assistance claim is contrary to, or an unreasonable application of, *Strickland* and *Kimmelman*, and so he is not entitled to relief on habeas ground VI.

### D.    Ground VII—Additional Charges

Next, Petitioner contends that his rights were violated "when the magistrate added extra charges during bindover in violation of separation of powers." (ECF No. 1-1, PageID.36.) Petitioner asserts that the "additional charges were sprung on [him] at the end of the prelim[inary examination]. His attorney did object to the additional charges and referred to lack of time to prepare for questioning." (*Id.*, PageID.48.) According to Petitioner, the magistrate's adding of

charges violated his due process rights because he did not receive fair notice of the charges against him. (*Id.*, PageID.47.)

As an initial matter, the Michigan Court of Appeals has noted that "[t]he examining magistrate is not limited by the charges alleged in the complaint and may add a count not charged at the close of proofs, even absent a motion by the prosecutor." *See People v. Shelly*, No. 250002, 2004 WL 2877289, at *1 (Mich. Ct. App. Dec. 14, 2004) (citing *People v. Hunt*, 501 N.W.2d 151 (1993); *People v. Gonzalez*, 543 N.W.2d 354 (1995)). Moreover, the Michigan Court of Appeals has squarely rejected the separation-of-powers argument raised by Petitioner. *See Gonzalez*, 543 N.W.2d at 356. Any assertion otherwise by Petitioner is meritless, and, in any event, "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68; *see also Bradshaw*, 546 U.S. at 76 (noting that a "state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Moreover, Petitioner cannot legitimately claim that he did not receive sufficient notice of the additional charges to allow him to defend against them such that his due process rights were violated. Petitioner's preliminary hearing occurred on May 6 and May 20, 2013, at which time he was bound over to the circuit court on all charges, including the additional ones. (ECF Nos. 17-4 and 17-5.) Petitioner was arraigned on all charges on June 11, 2013, and indicated his understanding of them. (ECF No. 17-6, PageID.449–456.) Petitioner, therefore, had ample notice—about five or six months prior to trial—concerning the additional charges, and he fails to assert that such notice was insufficient to permit him to adequately prepare a defense. Thus, Petitioner's claim regarding the additional charges does not implicate his due process rights. Because Petitioner has failed to demonstrate that the state courts' rejection of this claim is contrary

to, or an unreasonable application of, clearly established federal law, he is not entitled to relief on

habeas ground VII.

     **E.**     **Ground VIII—Admission of Gun**

     Petitioner next avers that the admission of the gun "brought in months after the fact was

improper." (ECF No. 1-1, PageID.48.) Petitioner contends that the gun in question was not found

on him but was brought into the police department months after his arrest. (*Id.*) Petitioner suggests

that the "prejudicial character of the [gun] outweighed its probative value. Many people have a[n]

unfavorable opinion about people who own guns." (*Id.*, PageID.50.) He avers that the "connection

to the crime of the gun brought in by the alleged victim months later was largely conjectural." (*Id.*)

     The Court's review of the record has led to a conclusion that at no time was a firearm

admitted at trial. In any event, to the extent Petitioner challenges the admission of evidence, he

fails to state a claim for habeas relief. As the Supreme Court explained in *Estelle*, an inquiry

whether evidence was properly admitted or improperly excluded under state law "is no part of the

federal court's habeas review of a state conviction [for] it is not the province of a federal habeas

court to re-examine state-court determinations on state-law questions." 502 U.S. at 67–68.

     It is not inconceivable, however, that evidence properly admitted under state law might

still have the effect of rendering Petitioner's trial unfair. State court evidentiary rulings, though,

"cannot rise to the level of due process violations unless they offend[ ] some principle of justice

so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour*

*v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (internal quotation marks omitted); *accord Coleman*

*v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

This approach affords the state courts wide latitude for ruling on evidentiary matters. *Seymour*,

224 F.3d at 552.

Moreover, under the AEDPA, a federal court may not grant relief if it would have decided the evidentiary question differently. A federal court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law, or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "'a Supreme Court case establishing a due process right with regard to the specific kind of evidence' at issue"). Here, however, Petitioner fails to identify any clearly established Supreme Court precedent that would preclude admission of any testimony or evidence at issue. Accordingly, because Petitioner has not demonstrated that his due process rights were violated by the admission of any evidence or testimony, he is not entitled to relief on habeas ground VIII.

### F.    Ground IX—Proportionality of Sentence

As his ninth ground for relief, Petitioner suggests that his sentence is "procedurally and substantively unreasonable, disproportionate, disparate, and inequitable." (ECF No. 1-1, PageID.54.) Petitioner bases his argument on his assertion that the "minimum sentence for each charge was based on the high, or highest end of the sentencing guidelines." (*Id.*, PageID.57.)

The term disproportionate is derived from state court authority regarding sentencing. *See People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017); *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990). As noted above, "a federal court may issue the writ to a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). Thus, any claim by Petitioner that the trial court violated state sentencing guidelines or state sentencing principles regarding disproportionality is purely a state law claim that is not cognizable on habeas review.

37

In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9–11; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). Nearly three decades later, in *Steanhouse*, the Michigan Supreme Court held that a sentencing court's departure from the sentencing guidelines is unreasonable if the court abused its discretion. *Steanhouse*, 902 N.W.2d at 335. The proper test for determining whether the sentencing court abused its discretion, it held, is found in *Milbourn*'s proportionality analysis. *Id.* at 335–37. In other words, a sentence departing from the guidelines is unreasonable if it is disproportionate.

It is clear that *Milbourn* and, thus, *Steanhouse*, were decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995) ("[Petitioner] argues that the trial court improperly exceeded the state sentencing guidelines and violated the principles of proportionality set forth in [*Milbourn*,] essentially asking the court to rule on a matter of state law which rarely serves as a basis for habeas corpus relief."); *Clarmont v. Chapman*, No. 20-1205, 2020 WL 5126476, at *1 (6th Cir. Jul. 13, 2020) ("[A]ny state law challenge to the reasonableness of [petitioner's] sentence or argument that his sentence is disproportionate under state law is also not cognizable on habeas review."); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994) ("Petitioner's claim that his sentence violates the proportionality principle of *People v. Milbourn* does not state a claim cognizable in federal habeas corpus."). Because this Court has no power to intervene based on a perceived error of state law, *see Wilson*, 562 U.S. at 5, any claims raised by Petitioner based upon *Milbourn* and *Steanhouse* are not cognizable in a habeas corpus action.

38

The same reasonableness and proportionality principles are not present in the Constitution's Eighth Amendment, even though the *Milbourne* court quoted *Weems v. United States*, 217 U.S. 349 (1910), for the proposition that "[i]t is a 'precept of justice that punishment for the crime should be graduated and proportioned to the offense.'" *Milbourne*, 461 N.W.2d at 9. However, *Weems* was not an Eighth Amendment case, as it involved a sentence imposed by the supreme court of the Philippines. *Weems*, 217 U.S. at 365–66. Thus, in *Weems*, the Supreme Court was interpreting the "cruel and unusual" punishment clause of the Bill of Rights of the Philippine Islands. *Id.* at 367.

The Eighth Amendment of the United States Constitution does not require strict proportionality between a crime and its punishment. *See Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *see also United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (discussing that gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (holding that principle applies only in "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality" (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980))). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death

or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.

For the foregoing reasons, Petitioner is not entitled to relief for habeas ground IX.

## IV.  Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

As set forth *supra*, the Court will grant Petitioner's § 2254 petition with respect to his claim that trial and appellate counsel were ineffective for failing to challenge the scoring of OV 3 for Petitioner's CSC-I conviction. Reasonable jurists could find that this Court's assessment of this claim and the relief to be granted debatable. *See Slack*, 529 U.S. at 484. The Court, therefore, will

grant a certificate of appealability with respect to this ground so that Petitioner may challenge any aspect of the relief granted. With respect to all other grounds for relief, the Court finds that reasonable jurists could not conclude that this Court's dismissal of such claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability as to all other grounds for relief.

## Conclusion

For the reasons set forth above, the Court concludes that trial and appellate counsel were ineffective for failing to object to the scoring of OV 3 for purposes of Petitioner's CSC-I conviction. The Court, therefore, will enter a judgment that grants Petitioner's § 2254 petition with respect to that ground. The judgment will deny Petitioner's § 2254 petition with respect to all other grounds. The judgment will also direct that Petitioner's sentence for CSC-I be vacated, and the State will be directed to conduct a resentencing hearing, at which time OV 3 should not be scored. The Court will also enter an order granting a certificate of appealability as to Petitioner's claim that trial and appellate counsel were ineffective for failing to challenge the scoring of OV 3 and denying a certificate of appealability as to all other grounds for relief.

Dated:   May 16, 2024                              /s/ Paul L. Maloney
                                                   Paul L. Maloney
                                                   United States District Judge